# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IDALIA JUDITH CANTU-THACKER, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-2109 |
| | § | |
| ROVER OAKS, INC., *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion for Summary Judgment [Doc. # 19] filed by Defendants Rover Oaks, Inc. ("Rover Oaks") and Stephen N. Smith.  Plaintiff Idalia Judith Cantu-Thacker filed a Response [Doc. # 22], and Defendants filed a Reply [Doc. # 23].  Having reviewed the full record in this case and having applied governing legal authorities, the Court **grants** Defendant's Motion for Summary Judgment.

## I.    FACTUAL BACKGROUND

Defendant Rover Oaks, owned by Defendant Stephen N. Smith, provides grooming, boarding, and other services for pets.  Plaintiff Cantu-Thacker began working for Rover Oaks as a pet stylist in September 2004, to be paid a commission consisting of 50% of the revenue generated on each pet she groomed.

In June 2006, Cantu-Thacker was promoted to supervisor of the grooming department.  The promotion did not include an increase in pay, but Plaintiff was authorized to claim a right of first refusal for the first ten dogs each day.  Although she was not required to work on weekends, Cantu-Thacker occasionally scheduled herself for weekend work.

In early 2007, Cantu-Thacker began to complain about her pay.  In April 2007, Rover Oaks offered Plaintiff her choice of new compensation plans to address her request that she be paid for performing the managerial responsibilities.  Cantu-Thacker selected a plan under which she would continue to receive the 50% commission on each pet she groomed.  In addition, Rover Oaks would pay Cantu-Thacker a bonus equal to 20% of all grooming revenues over $48,855.00.  The amount of "grooming revenues" excluded amounts expended for "atypical improvements or expenditures" for the grooming department.  Rover Oaks and Cantu-Thacker agreed to revisit this compensation plan in December 2007.

In December 2007, Cantu-Thacker complained that she was not paid overtime compensation.  Smith informed her that she was an exempt employee and, therefore, was not entitled to overtime compensation.

In 2008, Plaintiff advised Smith that she was unsure if she wanted to continue working for Rover Oaks.  Smith told her that she could retain her position as

grooming manager or, alternatively, Rover Oaks would hire another grooming manager and Plaintiff could continue working as a groomer.  While awaiting Plaintiff's decision, Smith interviewed an applicant for the grooming manager position.  Plaintiff eventually elected to retain her position as grooming manager and the applicant was not hired.  Rover Oaks invited Cantu-Thacker to submit a proposed written compensation plan, but Plaintiff did not do so.  Instead, Cantu-Thacker began developing her own competing dog-grooming business.  Cantu-Thacker resigned from Rover Oaks on April 11, 2008.

On July 11, 2008, Plaintiff filed this lawsuit alleging that she was not paid overtime compensation as required by the Fair Labor Standards Act (the "FLSA").  Plaintiff also alleged that, after she complained that she was not being paid overtime compensation, Defendants retaliated against her "by reducing the amount of income she was able to generate through her piece rate work."  *See* Complaint [Doc. # 1], ¶ 11.

After an ample time for discovery, Defendants filed their Motion for Summary Judgment.  The motion has been fully briefed and is ripe for decision.

## II.    <u>STANDARD FOR SUMMARY JUDGMENT</u>

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'"  *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.  *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).  Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).  Instead, the

nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted).

## III.   ANALYSIS

### A.    FLSA Claim for Overtime Compensation

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  Defendants assert that Plaintiff is exempt from the overtime compensation

requirements of the FLSA because Rover Oaks is a service establishment and Plaintiff is paid on a commission basis.  Exemptions are narrowly construed, and the employer has the burden to prove that an exemption under the FLSA applies.  *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 584 (5th Cir. 2006).

Section 7(i) of the FLSA excludes from the FLSA's overtime provisions "any employee of a retail or service establishment . . . if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under the [minimum wage section of the FLSA], and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services."  29 U.S.C. § 207(i). It is uncontroverted that Defendants operate a "retail or service establishment" within the meaning of § 7(i).

For purposes of section 7(i) of the FLSA, the statutory "regular rate of pay" "is a rate per hour, computed for the particular workweek by a mathematical computation in which hours worked are divided into straight time earnings for such hours." 29 C.F.R. § 779.419.  It is uncontroverted that the applicable minimum wage for the entire time Plaintiff worked at Rover Oaks was $5.85 per hour.  In 2005, Plaintiff was paid $42,675.00; in 2006, she was paid $39,974.00; in 2007, Plaintiff was paid $57,400.72.  Consequently, it order for her rate of pay to fall below $8.78, or 1.5 times the minimum wage of $5.85 per hour, Plaintiff would need to have worked at least 93

hours per week in 2005, 87 hours per week in 2006, and 113 hours per week in 2007.[1] There is no evidence or allegation that Plaintiff worked a number of hours per week even approaching these numbers.  As a result, Defendant has satisfied its burden on this element of the exemption.

The uncontroverted evidence establishes that more than 50% of Plaintiff's pay consisted of commissions.  She received 50% of the revenue generated from each dog she groomed.  This element of her compensation far exceeded any other element.  For example, in 2007, Plaintiff was paid $57,400.72.  Of that total amount, $55,106.45 was from commissions, $822.14 was from tips, and $1,472.13 was from bonuses.

Plaintiff alleges in her Complaint that she was paid on a "piece rate" basis rather than on a commission basis.  *See* Complaint, ¶ 5.  In her Response to the Motion for Summary Judgment, Plaintiff questions whether her commission was a "bona fide commission."  Response [Doc. # 22], at 9.  Whether a particular payment constitutes a commission for purposes of the FLSA exemption is a question of law to be determined in light of the characteristics of the specific compensation system at issue. *See Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001);

---

[1]     These figures are calculated by dividing the annual pay by 52 weeks, then dividing the average weekly pay by $8.78.  For example, Plaintiff earned $42,675.00 in 2005, for an average weekly pay of approximately $820.67.  To earn that amount at the rate of $8.78, Plaintiff would need to have worked approximately 93.47 hours.

*Mechmet v. Four Seasons Hotel Ltd.*, 825 F.2d 1173, 1175 (7th Cir. 1987).  For purposes of the FLSA, payment to an employee is a commission if it is based on a percentage of the charge to the customer.  *See Huntley v. Bonner's, Inc.*, 2003 WL 24133000, *2-3 (W.D. Wash, Aug. 14, 2003) (citing U.S. Dept. of Labor's Field Operations Handbook, section 21h04(d)).  In a "piece work" system, on the other hand, an employee is paid a certain amount per task regardless of the amount charged to the customer.  *See id.*  In this case, it is undisputed that Plaintiff was paid 50% of the amount charged to the customer and, as a result, was paid on a commission basis.

The uncontroverted evidence establishes that Plaintiff was an employee of a service establishment, that her "regular rate of pay" exceeded one and one-half times the applicable minimum hourly rate, and that more than half her compensation for any representative period was from commissions on dog grooming services.  As a result, Plaintiff is an exempt employee under 29 U.S.C. § 207(i) and Defendants are entitled to summary judgment on her FLSA claim for unpaid overtime.

**B.**   **Retaliation Claim**

Retaliation claims under the FLSA are analyzed under the *McDonnell Douglas* framework.  *See Casey v. Livingston Parish Commc'ns. Dist.*, 2009 WL 577756, *5 (5th Cir. Mar. 6, 2009); *Kanaida v. Gulf Coast Med. Personnel LP,* 353 F.3d 568, 577 (5th Cir. 2004).  First, the plaintiff must establish a *prima facie* case of retaliation by

showing that (1) she engaged in activity protected under the FLSA; (2) she suffered an adverse employment action; and (3) there exists a causal link between the protected activity and the adverse employment action.  *See Casey*, 2009 WL 577756 at *5; *Aguirre v. SBC Communications, Inc.*, 2007 WL 2900577, *26 (S.D. Tex. Sept.30, 2007) (Rosenthal, J.).  Defendant argues that Plaintiff cannot establish a *prima facie* case of FLSA retaliation because she did not suffer an adverse employment action.  An adverse employment action for purposes of a retaliation claim must include conduct that "a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006).  "The significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* at 69.  It is important to separate "significant from trivial harms." *Id.* at 68.

Plaintiff alleged in her Complaint that, after she complained that she was not being paid overtime compensation, Defendants retaliated against her "by reducing the amount of income she was able to generate through her piece rate work." *See* Complaint [Doc. # 1], ¶ 11.  This allegation, however, is refuted by the uncontroverted evidence in the record.  After Plaintiff complained in late 2007 that she was not being paid for overtime hours, her 50% rate of commission remained the same, her ability

to claim a right of first refusal for the first ten dogs each day remained unchanged, and her actual income increased.  Indeed, in 2008, Plaintiff earned $23,898 for the period until her resignation on April 11, 2008.

Plaintiff stated in her Response that Smith "began to openly interview candidates for [Plaintiff's] position, and even introduced [her] to at least one of the potential candidates on one occasion." *See* Response, p. 4.  Plaintiff also asserted in her Response that, when she advised Smith that she was unsure if she wanted to continue as grooming manager, Smith told her that he could not guarantee that she would make as much money as a regular groomer as she was making as the manager of the grooming department.  *See id.*  This alleged conduct does not rise to the level of an adverse employment action.  A reasonable employee must anticipate that, if she threatens to resign her employment, the employer will begin to interview candidates to fill the vacated position.  Smith's alleged statement that he could not guarantee that Plaintiff would earn as much if she chose to discontinue her position as grooming manager and become a regular groomer was accurate.  As a regular groomer, Plaintiff would no longer be entitled to the bonuses or to claim a right of first refusal for the first ten dogs each day.[2]  Plaintiff has failed to present evidence that raises a genuine issue of material fact on the "adverse employment action" element of her *prima facie*

---

[2]       It is undisputed that Plaintiff elected to remain in the manager position rather than become a regular groomer.

case of retaliation under the FLSA.  As a result, Defendants are entitled to summary judgment on this claim.[3]

## IV.   CONCLUSION AND ORDER

Based on the foregoing, the Court concludes that Plaintiff was an exempt employee and is not entitled to overtime compensation under the FLSA.  The Court further concludes that Plaintiff has failed to raise a genuine issue of material fact to support a *prima facie* case of FLSA retaliation.  Accordingly, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 19] is **GRANTED**.  The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas this **30th** day of  **June, 2009**.

Nancy F. Atlas
United States District Judge

---

[3]   Plaintiff states in the Conclusion section of her Response that she "believes she was constructively terminated from Rover Oaks."  *See* Response, p. 13.  An employee is constructively discharged when "the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign."  *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).  The constructive discharge inquiry is an objective one, asking "whether a reasonable person in the plaintiff's shoes would have felt compelled to resign."  *Id.*  Plaintiff did not allege a constructive discharge in her Complaint and the theory is not properly presented for decision.  In any event, on the merits, Plaintiff has not presented evidence that raises a genuine issue of material fact that a reasonable person in the situation as she describes it would have felt compelled to resign.  Plaintiff has not presented evidence that supports a constructive discharge, either as a separate claim or as an "adverse employment action."